STEPTOE, JUDGE:
By contract in writing dated June 28, 1990, between West Virginia Division of Highways, the respondent and hereinafter known as “Highways,” and Tri-State Asphalt *235 Corporation, claimant and hereinafter known as “Contractor,” it was agreed by the parties that for a specified sum payable by Highways, Contractor would furnish labor, material and miscellaneous concomitant services to prepare for repaving and to repave 1.88 miles of a public road in and near Wheeling known as River Road and designated as West Virginia Route 2.
Plans and specifications were attached to and made part of the contract.
Contractor fully performed the work stipulated to be done, and Highways accepted the work and paid the agreed price.
On December 20, 1990, after all work had been done but before having received its final cash payment, Contractor requested additional compensation of $8,404.76 for work it had done and which Contractor alleged was outside of the scope of the work required by the contract but which it had been forced or directed to perform by representatives of Highways.
Highways refused to pay the additional sum so requested by Contractor, and Contractor thereupon filed a claim for the money in this Court.
Contractor alleges that under Section 229.01 of the contract it performed preparatory work on shoulders and ditches, which called for payment for that phase of the contract in the amount of $8,807.80, but which in fact, because of demands made upon it by representatives of Highways, for work not specified in the contract, actually cost $17,212.56, and its claim is for its additional costs.
The Court believes, after reviewing the pleadings, the evidence, arguments and post-hearing briefs of the parties, that there are three areas of disagreement between the parties, to wit:
Removal of concrete curbing;
Removal of so-called sluffage; and
Work in and around ditches,
which will be considered seriatim.
Removal of Concrete Curbing
The parties agree that Contractor was required to remove, before commencement of repaving, concrete curbing between Station 81 +25 and Station 87+70 Rt., as directed by note on Plate 24 of the Plan of Proposed Improvement incorporated into the contract.
The contract did not specify any particular method, or any particular machinery, by which the Contractor should effect removal of the concrete.
*236 It is clear from the evidence that, in estimating its cost to remove the concrete in preparation for making its bid on the whole contract, Contractor believed that the most efficient method of removing the concrete would be by the use of a Barcomill, a mobile piece of machinery on which was mounted a cylinder with high-tensile metal spikes attached, which could, when revolved by a motor at high speed, break up concrete upon contact. In his case the Barcomill failed to do the job properly, and the Contractor, preforce, resorted to the use of a jackhammer powered by compressed air to do the job, at considerable additional expense.
The Court finds that the scope of work required of the Contractor was in no way enlarged, and that the Contractor’s additional expense was the result of Contractor’s unfortunate decisions to use the Barcomill for concrete removal and bid on the basis of that method of removal.
Removal of Sluffage
Perhaps relying upon notes on Plate 8 of the Plan aforesaid, Contractor evidently assumed in its bid preparation that it would not be required to cleanse the whole outside slope of each ditch of sluffage (also spelled sloughage i.e,, detritus and trash and so forth). On the first day of work, however, Highway’s representatives disabused Contractor as to that assumption, and insisted upon a cleansing of all outside slopes to ditches for the whole length of the project and on both sides of the road.
The Court finds that Highways was justified in its stance by the specific language of a Project note attached to Plate 28 of the Plan aforesaid, providing:
Shoulder and ditch work to include removal of all sluffage from existing embankment behind existing ditch line. (Emphasis supplied).
The Court believes that the contract means just what it says. Contractor’s removal of sluffage in excess of what it had anticipated was not outside the scope of work mandated in the contract.
Work In and Around Ditches
The plan of Proposed Improvement, at Plate 8, provides in material part:
This operation is intended to be minor shaping and scarifying of existing shoulder material plus shaping of ditches for proper drainage without leaving ditch soil on the shoulder area. This operation also includes cleaning of existing structure outlets and inlets.
*237 Plate 28 contains a project note providing:
New ditch line to be established from Sta. 9+62 to Sta. 11+60 Rt. Centerline of new ditch line to be approximately 7' from E.P. Payment to be included in Item No. 229-01.
Plate 24 contains a note providing:
Sta. 85+00 to Sta. 99+60 Lt. Place swale 6' from E.P. Reshape to drain to inlets.
In fact, therefore, Contractor was required to do some ditch construction as well as ditch shaping, and such ditch construction cannot be considered to be outside the scope of required work to justify additional compensation.
On Saturday, October 13,1990, Contractor had a crew, with machinery and trucks, working on ditches and a swale,'in a nearly level area between Station 85 +00 and Station 99+66, under the supervision of John T. McDevitt, the company engineer. By the end of day, Mr. McDevitt felt that the water was flowing through the swale in the area, properly, and at the hearing he testified that Highway’s Inspector, Richard Dean Fordyce, indicated that there was no problem with the work. Accordingly, Mr. McDevitt caused the machinery to be moved to a company project in Weirton. Later in the day Mr. Fordyce wrote his daily report to his superiors and in it advised that he was displeased with the work, which he said needed correction. On the following Monday, October 15,1990, Mr. Fordyce’s superiors made an on-the-site inspection of the swale and directed Contractor to return to the site and do what had to be done to make water run through the swale. Contractor did so the same week, but now seeks additional compensation for having worked the extra days, inferring that the work was satisfactorily done on October 13th. Accordingly, we find that the additional work performed by the Contractor during the week commencing October 14th was corrective in nature and, therefore, not compensable.
Claim disallowed.